DA 10-0201

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 230

TOM HINDERMAN and GLORIA SCHNELL,

        Plaintiffs and Appellants,

    v.

G. ALLAN KRIVOR, ROCKY MOUNTAIN LAND,
and NORTHERN ROCKIES CORPORATION,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DV 05-39
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            D. Scott Manning, Montana Property Law, PC, Missoula, Montana

        For Appellees:

            Matthew Baldassin, Datsopoulos, MacDonald & Lind, PC, Missoula,
Montana

                           Submitted on Briefs:  September 1, 2010

                                   Decided:  November 1, 2010

Filed:

            _____
                           Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     The Fourth Judicial District Court, Mineral County, granted Defendants' motion for summary judgment, enforcing the settlement agreement entered into between the parties. We affirm.

## BACKGROUND

¶2     In 2003, Plaintiffs entered into agreements to purchase Lots 7[1] and 8 of the Cayuse Ridge Ranch subdivision owned by Defendants.  The purchase agreement for Lot 8 specifically noted matters of record, including a "Montana Trust Indenture by and between Larsen, [sic] & Northern Rockies Corporation, Grantor . . . ."  Defendants conveyed Lot 8 to Plaintiffs by warranty deed in March 2003.  The Lot 8 warranty deed guaranteed that the property was "free from all encumbrances, **EXCEPT** . . . other matters of record . . . ."  Defendants had recorded two mortgages on Lot 8 before Plaintiffs acquired the lot:  (1) a mortgage to Northern Rockies Corporation, mortgagor, and Larsons, mortgagees, in May 2002 and (2) a mortgage to Northern Rockies Corporation, mortgagor, and Krivors, mortgagees, in July 2002.

¶3     After Plaintiffs acquired the lots, a dispute arose between the parties regarding the installation of power, and Plaintiffs filed suit in 2005, alleging breach of contract, fraud, negligent misrepresentation, and violations of the Montana Unfair Trade Practices and Consumer Protection Act.

---

[1] Lot 7 is not the subject of this appeal.

¶4     In 2006, Plaintiffs purchased an additional parcel, Lot 10, from the Draves. The Lot 10 warranty deed noted that the property was "free from all encumbrances except a lien to Rocky Mountain Land/Northern Rockies Corporation." Defendants had also recorded a mortgage on the lot in July 2002 to Northern Rockies Corporation, mortgagor, and Krivors, mortgagees.

¶5     While the lawsuit was pending, Plaintiffs, on the advice of counsel, quit making payments on Lots 8 and 10. Consequently, Defendants initiated foreclosure proceedings on those lots.

¶6     The parties met for a settlement conference in June of 2007 and settled. Under the terms of the settlement agreement, Defendants agreed to postpone the July 2007 foreclosure sale of Lots 8 and 10 to allow time for Plaintiffs to pay off both lots at a discounted amount. However, if Plaintiffs did not pay the discounted amount by September 7, 2007, they would then be responsible for paying the full purchase price within three days, or Defendants would foreclose on the lots. The parties also agreed to sign a mutual release of all claims and dismiss their claims with prejudice. Both parties entered the settlement with the advice and approval of counsel.

¶7     Plaintiffs failed to pay off the discounted amount by September 7, 2007, and, as provided under the terms of the settlement agreement, Defendants foreclosed and purchased the properties on September 10, 2007. Within a week, Plaintiffs filed a lis pendens on the properties. Plaintiffs refused Defendants' request to release the lis pendens.

¶8   In February 2008, Defendants filed a motion to enforce the settlement agreement. Plaintiffs' counsel subsequently withdrew.  In September 2008, Defendants moved for summary judgment, requesting that the District Court enforce the settlement agreement, remove the lis pendens, and dismiss the case with prejudice.  The District Court issued an order allowing Plaintiffs until December 2008 to respond to Defendants' motion for summary judgment.  In December 2008, Plaintiffs' current counsel appeared and filed a motion either for additional discovery pursuant to M. R. Civ. P. 56(f) or to strike Defendants' motions to enforce the settlement agreement and for summary judgment.  The District Court denied Plaintiffs' motion in July 2009 and ordered Plaintiffs to file a response to Defendants' motion for summary judgment.  Following briefing, the District Court deemed the matter submitted and granted Defendants' motion for summary judgment in March 2010.

¶9   We rephrase the issues on appeal as follows:

¶10   Issue 1:  Did the District Court err in denying Plaintiffs' M. R. Civ. P. 56(f) motion for additional discovery?

¶11   Issue 2:  Did the District Court err in enforcing the settlement agreement?

## STANDARDS OF REVIEW

¶12   A district court may continue a motion for summary judgment on the basis that an opposing party needs additional discovery.  M. R. Civ. P. 56(f); *Rosenthal v. County of Madison*, 2007 MT 277, ¶ 23, 339 Mont. 419, 170 P.3d 493.  We review the denial of a M. R. Civ. P. 56(f) motion for an abuse of discretion.  *Rosenthal*, ¶ 23.

4

¶13 We review a district court's summary judgment ruling de novo, applying M. R. Civ. P. 56 criteria. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, demonstrate that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Phelps v. Frampton*, 2007 MT 263, ¶ 15, 339 Mont. 330, 170 P.3d 474. Once the moving party establishes that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to demonstrate with substantial evidence, not mere denial, speculation, or conclusory assertions, that a genuine issue of material fact exists or that the moving party is not entitled to judgment as a matter of law. The district court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law is a conclusion of law which we review for correctness. *Id.* at ¶ 16.

**DISCUSSION**

¶14 *Issue 1: Did the District Court err in denying Plaintiffs' M. R. Civ. P. 56(f) motion for additional discovery?*

¶15 The District Court denied Plaintiffs' Rule 56(f) motion on the basis that Plaintiffs failed to demonstrate why additional discovery was necessary or how it would preclude summary judgment. Plaintiffs contend that because the District Court denied additional discovery pursuant to Rule 56(f), the material facts were never analyzed by the District Court. Plaintiffs allege that, therefore, it was impossible for the District Court to conclude

5

that no genuine issue of material fact exists or that Defendants were entitled to judgment as a matter of law.

¶16 A district court retains inherent discretionary control over discovery, including whether, pursuant to Rule 56(f), to continue a motion for summary judgment to allow an opposing party additional time to conduct discovery. *Rosenthal*, ¶ 37. M. R. Civ. P. 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A district court does not abuse its discretion in denying a Rule 56(f) motion if the party moving for additional discovery fails to establish how the proposed additional discovery will prevent summary judgment. *Rosenthal*, ¶ 38.

¶17 Plaintiffs' counsel's affidavit in support of their Rule 56(f) motion reveals that counsel conducted an initial investigation of the status of the properties' titles, which revealed encumbrances on the lots. Counsel's affidavit fails to establish why additional discovery is necessary or how it would prevent summary judgment. If anything, the affidavit demonstrates Plaintiffs had constructive notice of the encumbrances, an undisputed material fact that, as discussed in Issue 2, makes summary judgment appropriate. Because Plaintiffs failed to establish how additional discovery would prevent summary judgment, we conclude the District Court did not abuse its discretion in denying Plaintiffs' Rule 56(f) motion.

¶18 *Issue 2: Did the District Court err in enforcing the settlement agreement?*

6

¶19    Plaintiffs argue the settlement agreement is invalid because Defendants misrepresented that the properties were free from all encumbrances when the properties were in fact encumbered by Defendants' own mortgages. Plaintiffs allege this prevented them from obtaining financing and, therefore, performing under the settlement agreement. Plaintiffs also assert that constructive notice of the mortgages should not be a defense to sellers who intentionally misrepresent the status of title. Further, Plaintiffs claim the settlement agreement should have been pled as a new cause of action before it could be enforced.

¶20    The District Court concluded that because Plaintiffs had actual and constructive notice of the mortgages and/or because means were available to Plaintiffs to ascertain the truth—the mortgages were recorded five years before Plaintiffs entered into the settlement agreement—Plaintiffs could not claim that alleged misrepresentations regarding the warranty deeds invalidated the settlement agreement. In addition, the District Court found that Plaintiffs failed to raise any genuine issue of material fact demonstrating that Defendants had actually misrepresented the status of title. Plaintiffs' erroneous assumption that they would be able to obtain third party financing in order to perform under the settlement agreement was not, in and of itself, sufficient to invalidate the agreement. The District Court further concluded that Defendants were not required to file a separate lawsuit in order to enforce the settlement agreement.

¶21    A valid settlement agreement is enforceable like any other binding contract. *In re Marriage of Mease*, 2004 MT 59, ¶ 57, 320 Mont. 229, 92 P.3d 1148. A party may rescind a

settlement agreement if its consent to the agreement was given mistakenly or obtained through duress, menace, fraud, or undue influence exercised by another party to the agreement. Section 28-2-1711(1), MCA. A party who claims to have been prejudiced by alleged misrepresentations has no ground for complaint if he or she has in fact investigated the truth of the representations *or* means were available for him or her to ascertain the truth of the representations. *Aetna Life Ins. Co., v. McElvain*, 221 Mont. 138, 148, 717 P.2d 1081, 1087 (1986). A recorded conveyance of real property puts subsequent mortgagees on constructive notice of its contents. Section 70-21-302, MCA.

¶22 Upon motion by a party, a district court can enforce a settlement agreement in a case pending before it, as long as the existence and terms of the agreement are not in dispute. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *see also Walker v. Warner*, 228 Mont. 162, 165, 740 P.2d 1147, 1149 (1987).

¶23 Here, Plaintiffs' claims of misrepresentation fail because they had both actual and constructive notice of the mortgages. First, Plaintiffs were on actual notice of the mortgage between Northern Rockies Corporation and Larsons because the Lot 8 purchase agreement specifically mentioned it. Additionally, Plaintiffs were on actual notice of the Lot 10 lien to Rocky Mountain Land/Northern Rockies Corporation because it was noted in the warranty deed.

¶24 Further, even if Plaintiffs did not have actual notice, they had constructive notice of the encumbrances. The mortgages on Lots 8 and 10 were recorded in 2002. Plaintiffs did not purchase Lots 8 and 10 until 2003 and 2006 respectively. Thus, Plaintiffs had

8

constructive notice of the mortgages when they purchased the properties and subsequently entered into the settlement agreement, § 70-21-302, MCA, a point which Plaintiffs concede. Because means were available for Plaintiffs to ascertain the truth of the status of title to Lots 8 and 10—a simple title check with the Mineral County Clerk and Recorder—they cannot claim misrepresentation or fraud as to the warranty deeds and, in turn, seek invalidation of the settlement agreement on that basis. Plaintiffs voluntarily entered into the settlement agreement with the advice of counsel and agreed to pay off amounts owed for Lots 8 and 10 by September 7, 2007. Plaintiffs cannot blame Defendants for Plaintiffs' own failure to obtain financing in order to rescind the settlement agreement.

¶25 Finally, because the case was still pending before the District Court when Defendants moved to enforce the settlement agreement, the District Court properly granted their motion. Contrary to Plaintiffs' argument, Defendants were not required to bring a new claim in order to enforce the agreement. As long as the lawsuit had not been dismissed, either party may have moved the District Court to enforce the settlement agreement. 15A Am. Jur. 2d *Compromise and Settlement* § 49 (2000).

## CONCLUSION

¶26 We affirm the District Court's order granting summary judgment in favor of Defendants.

/S/ MICHAEL E WHEAT

9

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice Jim Rice, concurring.

¶27 Defendants emphasize the language within the warranty deeds stating that the properties were "free from all encumbrances, **EXCEPT** . . . restrictions, easements in view and of record; and other matters of record" and other similar statements made in the original transaction documents. Defendants argue that this language and the operation of the recording statutes put Plaintiffs on actual and constructive notice of the mortgages at the time they purchased the properties. However, Plaintiffs correctly counter that this general language did not negate the statutorily implied covenant that the granted properties were "at the time of the execution of the conveyance free from encumbrances done, made, or suffered by the grantor . . . ." Section 70-20-304(1)(b), MCA. This statutory covenant may be negated only "by express terms contained in the conveyance," § 70-20-304(1), MCA, which did not exist here. Further, while the recording statutes provide notice and priority against later filed conveyances, *see* Title 70, chapter 21, part 3, MCA, they do not eliminate the statutory covenants upon which Plaintiffs, as grantees, could rely.

10

¶28     Nonetheless, these statutory covenants applicable to conveyances did not arise with regard to the settlement agreement. For that purpose, Plaintiffs were properly considered to have received, as the District Court explained, "either constructive notice or actual notice, or both, of the encumbrances" prior to entering the agreement, and thus the encumbrances did not form a basis for challenging the agreement on grounds of misrepresentation or unfairness.

¶29     I concur.

/S/ JIM RICE