FILED

08/11/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0508

DA 19-0508

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 205N

B.D., a minor, by and through her parents and
guardians ad litem, JASON and KELLY DEMING,
and JASON DEMING and KELLY DEMING, Individually,

      Plaintiffs and Appellees,

    v.

MARK HIRAM DEMING,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV-16-101
Honorable Olivia C. Rieger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Mark H. Deming, Self-Represented, Deer Lodge, Montana

      For Appellees:

          Mark D. Parker, Geoffrey T. Cunningham, Parker, Heitz & Cosgrove,
PLLC, Billings, Montana

                  Submitted on Briefs:  July 1, 2020

                         Decided:  August 11, 2020

Filed:

                    _____
                              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 In this appeal, we affirm the Seventh Judicial District Court's order enforcing a settlement agreement in a civil case. The case was brought by the parents of B.D., Mark H. Deming's (Deming) granddaughter, whom he was convicted of assaulting in 2014 when she was three years old. Deming is presently serving a prison sentence for that offense. Jason and Kelly Deming filed a verified complaint in October 2016, seeking compensatory and punitive damages on their daughter B.D.'s behalf for sexual assault, battery, willful misconduct, and emotional distress; they also sought damages on their own behalf for infliction of emotional distress. The complaint was filed by co-counsel Luke Savage of the Sidney, Montana, Savage Law Firm and Casey Heitz of the Billings firm Parker, Heitz, & Cosgrove, PLLC.

¶3 Deming appeared through counsel and filed his answer to the complaint. A year later, he moved to disqualify Luke Savage as Jason and Kelly's counsel on the ground that the Savage Law Firm had represented both Deming and other family members at various times and on various matters, through which the firm had gained knowledge and information concerning Deming's financial affairs, financial condition, and net worth.

2

Deming argued that such information would be relevant to Jason and Kelly's claim for punitive damages. The District Court denied the motion, concluding after consideration of the parties' submissions that Savage's representation of Jason and Kelly would not prejudice or adversely affect Deming in the case. On the basis of the affidavits, it found that any information Savage held regarding Deming's financial affairs "is not confidential, was never asserted specifically by Deming to be confidential, and the prior dealings between Savage and Deming did not create a confidential client-attorney relationship."

¶4 Following discovery and the filing of additional motions, the parties participated in mediation on July 20, 2018. The mediation took place at Montana State Prison (MSP). Deming was present in person and represented by his three attorneys, Brandon C. Hartford, Charity McLarty, and Michael Haase. Jason and Kelly appeared with their attorneys, Luke Savage, Casey Heitz, and Geoffrey Cunningham. Mediator Michael Anderson reported to the District Court that the case had settled.

¶5 The mediation produced an eight-page handwritten settlement agreement, signed by all parties and their respective counsel. Deming later refused to sign the formal memorialization of that agreement, and the District Court permitted his attorneys to withdraw. Jason and Kelly moved to enforce the agreement. Following a hearing at which Deming appeared pro se by telephone from MSP, the District Court rejected Deming's claim of duress and found no factual or legal basis that would preclude enforcement of the binding, written settlement agreement. The court gave him five days

3

to sign the formal agreement and all other necessary conveyance documents and directed the Clerk of Court to execute the documents on his behalf if he failed to do so. Deming appeals.

¶6     Deming raises what he terms four "inter-related" issues, starting with a September 5, 2014 permanent order of protection issued by Richland County Justice of the Peace Greg Mohr and including events that transpired during the MSP mediation.[1] Deming argues that terms were added or changed in the formalized agreement and that Jason continues to hold Deming's personal property in violation of the agreement. Deming raises numerous additional claims about alleged misrepresentation and fraud by his own attorneys, the duress under which he suffered during the day-long mediation, and failure of the mediator and his own counsel to disclose discussions they allegedly had the day following the mediation, which Deming discovered upon receiving a bill for his attorneys' stay at Fairmont Hot Springs Resort the night of mediation.

¶7     "A valid settlement agreement is enforceable like any other binding contract." *Hinderman v. Krivor*, 2010 MT 230, ¶ 21, 358 Mont. 111, 244 P.3d 306

---

[1] While Jason and Kelly's civil case was pending, Deming was charged criminally with violating the 2014 order of protection. Though he did not enter the order of protection, Luke Savage later took office and now serves as Justice of the Peace in Richland County. On appeal, Deming has not developed any supportable argument that the District Court improperly denied his motion to disqualify Luke Savage from representing Jason and Kelly based on the argument Deming presented in his motion, which pertained solely to the Savage firm's prior representation of Deming family members. Deming instead argues that Savage abused his office as Justice of the Peace, unlawfully searched Deming's home to obtain financial records without a warrant, retaliated against Deming, and used his position to advance his own economic interest. Deming also argues that the order of protection was invalid. Deming has not carried his burden on appeal to demonstrate error in the court's denial of his motion on the basis argued. And Deming's dispute with the order of protection is unrelated to the issue on appeal—the validity of the settlement agreement. We do not further address these arguments.

(citation omitted). "A party is bound to a settlement agreement if 'he or she has manifested assent to the agreement's terms and has not manifested an intent not to be bound by that assent.'" *Kluver v. PPL Mont., LLC*, 2012 MT 321, ¶ 33, 368 Mont. 101, 293 P.3d 817 (quoting *Lockhead v. Weinstein*, 2003 MT 360, ¶ 12, 319 Mont. 62, 81 P.3d 1284). We review for correctness a district court's legal conclusion that a binding contract exists between the parties; we review its findings of fact for clear error. *Kluver*, ¶ 19.

¶8 Based on the evidence, including Deming's testimony that he signed the handwritten agreement, the District Court found that the parties reached a final settlement at the mediation and concluded that the agreement is binding and enforceable. The court determined that the handwritten agreement included all essential terms to achieve the parties' lawful objective—settlement of Jason and Kelly's claims for their daughter and themselves—and that it set forth specifically the property and interests Deming would convey, free and clear from any liens and encumbrances, and the property Deming would retain for himself.

¶9 Deming's principal dispute with the settlement agreement is his claim that he did not receive a copy of the handwritten agreement and did not discover until seeing the changes made in formalizing it that he is to retain only a twenty-five percent interest in income from the proceeds of "the gravel property" in which he held a life estate. Deming also argues that a clause was added preventing him from any recovery of personal property, which was not discussed at mediation. He claims further that he told his

5

attorneys he had no life insurance policies. Finally, he claims that more than $200,000 worth of his personal property is still being held by Jason in violation of the agreement, some exposed to the weather.

¶10    The handwritten agreement states on its face that Deming would receive, "[i]n exchange for his life estate interest [in the gravel property] 25% of all income from gravel proceeds for life." It identifies a pickup truck, a trailer, and a tractor Deming is to convey and provides that he shall retain his two Edward Jones accounts and title to "the '99 GMC." The agreement requires Deming to transfer his interest in his residence to Jason and Kelly; the formalized agreement makes clear that Deming is entitled to retain the personal property located in the residence and gives him sixty days to remove it. The handwritten agreement further requires Deming to name B.D. as the beneficiary of his two identified life insurance policies and, if possible, to transfer ownership of the policies to Jason and Kelly, with Jason and Kelly to pay the premiums. Deming signed the handwritten agreement.

¶11    After hearing Deming's testimony, the District Court found that, although incarcerated, Deming was not suffering duress that rendered him incapable of entering a binding settlement and that he had not provided credible evidence that he did not willingly enter into the handwritten settlement agreement. The court found that Deming's testimony at the hearing "demonstrates that he clearly understood the settlement agreement before he signed the document." When reviewing a district court's findings of fact, "[w]e view evidence in the light most favorable to the prevailing party,

6

and we leave the credibility of witnesses and the weight assigned to their testimony for the determination of the trial court." *Willis v. Fertterer*, 2013 MT 282, ¶ 25, 372 Mont. 108, 310 P.3d 544 (citation omitted). Deming has not shown clear error in the District Court's findings.[2] Review of the formalized agreement reveals that it is consistent with all material terms contained in the handwritten agreement, with additional provisions limited to the details necessary for execution of the agreement, release of mutual claims, and similar ministerial terms. Deming's claim on appeal that Jason and Kelly are not complying with the agreement's provision regarding his personal property is a matter of enforcement; it does not call into question the agreement's validity.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Deming has failed to show clear error in the District Court's factual findings. Based on those findings, the District Court correctly applied the law regarding the existence and implementation of contracts. Its order to enforce and implement the parties' settlement agreement is affirmed.

/S/ BETH BAKER

---

[2] The record on appeal does not include a transcript of the District Court's May 1, 2019 hearing. It is the appellant's duty to present this Court "with a record sufficient to enable it to rule upon the issues raised." M. R. App. P. 8(2).

7

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE